IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARCHITECTURAL RESOURCES GROUP, INC., *et al.*,

    Plaintiffs,

v.

HKS INC,

    Defendant.

No. C 12-5787 SI

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**

Defendant's motion to dismiss the complaint is scheduled for a hearing on January 25, 2013. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS the motion to dismiss and GRANTS plaintiffs leave to amend the complaint. If plaintiffs wish to amend the complaint, plaintiffs shall do so by **February 8, 2013**.

**BACKGROUND**

On November 9, 2012, plaintiffs Architectural Resources Group, Inc. ("ARG") and Ideas Consulting, Inc., filed this lawsuit against defendant HKS, Inc.[1] According to the complaint, in August 2009, HKS entered into a written agreement ("the Prime Agreement") with the United States General Service Administration ("GSA") to provide architectural services in connection with the renovation of

---

[1] ARG is also the assignee of certain claims. Compl. ¶¶ 2, 7.

the federal building located at 50 United Nations Plaza in San Francisco, California. Compl. ¶¶ 7-8. ARG entered into a written agreement with HKS to provide associate architectural consulting services on the project (the "ARG Agreement"). *Id*. ¶ 8.

The complaint alleges that "[t]hroughout the design process, the architects and their consultants were given conflicting guidance from GSA concerning its needs. On the one hand, GSA urged the design team to prepare 'aspirational' plans that reflected 20-first century 'green building' visionary concepts, while, on the other hand, GSA cautioned that the existing budget might not accommodate such an option. Due to tension created by these conflicting instructions, HKS was under significant pressure to accommodate and please the GSA, as it had been designated prime architect on the Project." *Id*. ¶ 11. The complaint alleges that in response to ongoing pressure from HKS, plaintiffs and the assignors devoted "huge amounts of time and resources, trying (successfully) to meet unrealistic project deadlines and to solve problems created by expressed design needs that did not realistically appear to fit into the originally stated budget, which plaintiffs are informed and believe has since been increased significantly." *Id*. ¶ 12. On March 24, 2010, HKS sent a written "termination for convenience" letter advising plaintiffs and the assignors that the GSA had elected to move forward with a different architect/engineering team. *Id*. ¶ 14.

The complaint alleges that the Agreements "contained a 'flow down' provision by which any claims asserted against the GSA by plaintiffs and/or assignors would be made through HKS, which held the Prime Agreement with GSA." *Id*. ¶ 17. According to the complaint, plaintiffs and assignors "repeatedly informed HKS they intended to submit pass-through claims to HKS for presentation to the GSA in connection with their termination, by which they would seek compensation for all sums due to them in connection with their work on the Project." *Id*. ¶ 18.

On June 15, 2010, HKS wrote plaintiffs and assignors and stated its intent to "convert your previous termination for convenience to a termination for cause." *Id*. ¶ 19. The complaint alleges that there is no legal or factual support for this act. *Id*. HKS also informed plaintiffs and assignors of its intent to pay certain fees for work performed up to the date of termination, which the complaint alleges was substantially less than the amounts invoiced to HKS and owed to plaintiffs and assignors. *Id*. ¶ 20.

The complaint alleges that "HKS was aware of the intent of plaintiffs and assignors to submit a claim to the GSA through HKS and, in fact, HKS repeatedly encouraged them to contact HKS' attorneys to keep them apprised of the process, which they did." *Id*. ¶ 23. The certified claims were finalized and ready for submission in or about January 2011. *Id*. The complaint alleges,

> Unbeknownst to plaintiffs and assignors, on June 25, 2010, HKS and GSA entered into an Amendment of Solicitation/Modification of Contract for the purpose of "definitizing a change order dated March 26, 2010." [the "Change Order"]. Per the modification, the parties memorialized the "Option B Restructure and Design" and equitably adjusted amounts payable to HKS by GSA on the Project. In consideration for the equitable adjustment, HKS, for itself and on behalf of all subconsultants under it, including plaintiffs and assignors, released GSA from any further liability for any additional equitable adjustments related to the Project. As a result, HKS, without notice to plaintiffs and assignors . . . essentially barred plaintiffs and assignors from submitting any claims to GSA relating to the Project, including the claims identified above.

*Id*. ¶ 24.

The complaint alleges that HKS hid the fact that it entered into the Change Order with GSA for over seven months, until February 3, 2011. *Id*. ¶ 25. On or about February 24, 2011, plaintiffs and assignors submitted a claim directly against HKS seeking amounts due and owing to them as result of the termination for convenience. The claim was submitted pursuant to Article 8.2 of the Agreements, which authorizes claims to be lodged directly with HKS in the event the claims were not possible under the "flow down" provisions. *Id*. ¶ 26.

The complaint alleges claims for breach of written contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, concealment on behalf of plaintiff ARG, breach of fiduciary duty to plaintiff ARG, declaratory relief, tortious interference with contract/business relations, negligence. Defendant has moved to dismiss the claims for concealment, breach of fiduciary duty, and tortious interference with contract/business relations. Plaintiffs oppose the motion only with respect to the concealment claim.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl*.

3

1 *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

The complaint alleges a claim for concealment on behalf of plaintiff ARG. The complaint alleges that in connection with the initial bids on the project, ARG and HKS agreed to submit, and did submit a proposal as part of a joint design team. Compl. ¶ 46. According to the complaint, the project documentation was set up such that HKS signed the Prime Agreement and ARG executed an agreement with HKS. *Id*. "Regardless, the parties worked on the project as a joint design team, as exemplified by the responsibility matrix attached to the ARG Agreement." *Id*. The complaint alleges that as a result, the parties "occupied a special business relationship by and between themselves." *Id*. ¶ 47. The complaint alleges that HKS actively concealed important facts from ARG, including " . . . the fact that

4

HKS intended to, and indeed did, enter into the Change Order . . . , and in connection therewith to release and cut off all of ARG's rights to claim entitlement to compensation or otherwise pursue legal remedies against the GSA relating to the Project." *Id*. ¶ 48. The complaint also alleges that HKS concealed the true state of affairs from ARG for over seven months, while ARG incurred extensive legal and accounting fees presenting a claim for termination-related damages . . . only to learn that it was precluded from pursuing that claim due to the acts of HKS." *Id*.

"[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (1992).

HKS moves to dismiss this claim on the grounds that it did not have a duty to disclose the Change Order, and that the Change Order was not material. HKS asserts that there is no authority holding that a professional services firm has a "special business relationship" with its subcontractors. With regard to materiality, HKS argues that even assuming the allegations of concealment to be true, ARG was not adversely affected because ARG never had any claims or rights against the GSA. HKS contends that any claims that ARG might have brought under its subcontract with HKS are claims against HKS, not the GSA. Relatedly, HKS argues that the subcontract between HKS and ARG, which is attached as an exhibit to the complaint, does not contain any agreement between the parties regarding a "pass-through" of ARG's claims against the GSA.

"[A] duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement. All of these relationships are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances." *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 336 (1997). Thus, the Court must look to the transaction between the parties to determine if HKS had a duty to disclose the Change Order and if the failure to do so was material. The Court finds that

5

if the parties' contract contained the "pass-through" or "flow down" provision alleged in the complaint, HKS would have had a duty to disclose the Change Order because the Change Order limited GSA's liability and could have detrimentally affected ARG's claims against GSA.

ARG's opposition cites Article 8.1 of the subcontract for the assertion that "[b]y the terms of the agreements between plaintiff and HKS, plaintiffs' claims against the GSA were required to be passed through to the GSA to be prosecuted through HKS." Docket No. 27 at 5:5-7. Article 8.1 states,[2]

> ARTICLE 8 CLAIMS AND DISPUTES
>
> **Section 8.1** Subject to Section 8.2, any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to the same dispute resolution provisions as set forth in the Prime Agreement. If such matter relates to or is the subject of a lien arising out of the Consultant's services, the Consultant may proceed in accordance with applicable law to comply with the lien notice of filing deadlines prior to resolution of the matter under the dispute resolution provisions set forth in the Prime Agreement.

Complaint, Ex. 1 § 8.1. ARG does not explain how this language addresses the pass-through of ARG's claims to GSA. Instead, this provision addresses dispute resolution provisions and references the Prime Agreement, which is not attached to the complaint.

The Court concludes that after consideration of Article 8.1 of the contract attached to the complaint, ARG has failed to state a claim for concealment against HKS. Absent an agreement between the parties that ARG's claims against the GSA would be made through HKS, the Court cannot conclude that HKS had a duty to disclose the Change Order because otherwise the Change Order would not detrimentally affect ARG. The Court GRANTS defendant's motion and GRANTS leave to amend the concealment claim. If plaintiffs amend the complaint, the amended complaint shall specifically allege the contractual basis for HKS's duty to disclose the concealed facts.[3]

---

[2] The ARG agreement was attached as an exhibit to the complaint, and "material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

[3] The complaint also alleges that HKS concealed "the fact that HKS intended to proceed with the Project on an Option B with the benefit of ARG's work product, while cutting ARG out of the negotiation process for securing continued work on the Project." Compl. ¶ 48. Plaintiffs' opposition does not address this aspect of the concealment claim and thus it is unclear whether ARG wishes to pursue the concealment claim on this basis.

6

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS defendant's motion to dismiss; the claims for breach of fiduciary duty and tortious interference with contract/business relations are dismissed without leave to amend, and the concealment claim is dismissed with leave to amend. Docket No. 18. If plaintiffs wish to amend the complaint they must do so by **February 8, 2013.**

**IT IS SO ORDERED.**

Dated: January 22, 2013

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE