IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARCHITECTURAL RESOURCES GROUP, INC., *et al.*,

        Plaintiffs,

  v.

HKS, INC.,

        Defendant.
                                       /

AND RELATED COUNTERACTIONS.
                                       /

No. C 12-5787 SI

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST THROUGH SIXTH CLAIMS OF COUNTER-COMPLAINT, WITH LEAVE TO AMEND**

      Plaintiffs/counter-defendants' motion to dismiss the first through sixth claims of the counter-complaint is scheduled for a hearing on February 15, 2013. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the motion to dismiss is GRANTED IN PART AND DENIED IN PART, and the Court GRANTS defendant leave to amend the counter-complaint. If defendant wishes to amend the counter-complaint, it shall do so by **February 28, 2013**. <u>The case management conference scheduled for February 15, 2013 at 2:30 pm remains on calendar</u>.

**BACKGROUND**

On November 9, 2012, plaintiffs and counter-defendants Architectural Resources Group, Inc. ("ARG") and Ideas Consulting, Inc. ("IDEAS") filed this lawsuit against defendant HKS, Inc. ("HKS"). On December 17, 2012, HKS filed an answer and counter-complaint against ARG and IDEAS.[1]

According to the complaint, in August 2009, HKS entered into a written agreement ("the Prime Agreement") with the United States General Service Administration ("GSA") to provide architectural services in connection with the renovation of the federal building located at 50 United Nations Plaza in San Francisco, California. Compl. ¶¶ 7–8. HKS subsequently entered into individual consulting agreement contracts with each of the plaintiffs and assignors in August 2009. *Id.* ¶¶ 8, 10.

The complaint alleges that "[t]hroughout the design process, the architects and their consultants were given conflicting guidance from GSA concerning its needs. On the one hand, GSA urged the design team to prepare 'aspirational' plans that reflected twenty-first century 'green building' visionary concepts, while, on the other hand, GSA cautioned that the existing budget might not accommodate such an option. Due to tension created by these conflicting instructions, HKS was under significant pressure to accommodate and please the GSA, as it had been designated prime architect on the Project." *Id.* ¶ 11.

In response, HKS exerted pressure on plaintiffs and the assignors, and they devoted "huge amounts of time and resources, trying (successfully) to meet unrealistic project deadlines and to solve problems created by expressed design needs that did not realistically appear to fit into the originally stated budget, which plaintiffs are informed and believe has since been increased significantly." *Id.* ¶ 12. On March 24, 2010, HKS sent a written "termination for convenience" letter advising plaintiffs and the assignors that the GSA had elected to move forward with a different architect/engineering team. *Id.* ¶ 14. On June 15, 2010, HKS wrote plaintiffs and assignors and stated its intent to "convert your previous termination for convenience to a termination for cause." *Id.* ¶ 19. The complaint alleges that there is no legal or factual support for this act. *Id.* HKS also informed plaintiffs and assignors of its intent to pay certain fees for work performed up to the date of termination, which the complaint alleges was substantially less than the amounts invoiced to HKS and owed to plaintiffs and assignors. *Id.* ¶ 20.

---

[1] ARG is also the assignee of claims held by Loisos + Ubbelhodhe ("Loisos") and by Tipping Mar, which allegedly arise out of the same transactions. Compl. ¶¶ 2, 7. HKS also filed a third-party complaint against Loisos and Tipping Mar.

In its counter-complaint, HKS alleges that the counter-defendants violated certain budget, scope and schedule constraints and failed to "understand[] or appreciat[e] . . . historic design requirements" in the consultant agreements and in HKS's directives. Counter-Compl. ¶¶ 14, 21. The counter-defendants' disregard for these requirements allegedly led the GSA to proceed with a different design track ("Design Option B") that was within budget and complied with GSA's historical preservation requirements. *Id.* ¶ 23.

The selection of Design Option B led the GSA to modify HKS's contract, but the consequences of the modification are disputed. HKS alleges that after the selection of Design Option B, the modification to HKS's contract resulted in "a net loss of hundreds of thousands of dollars in fees." *Id.* ¶¶ 23–24. The counter-defendants, however, assert that the modification increased the fees due to HKS, and they request that the Court take notice of the contract modification, which they have submitted as an exhibit to their Request for Notice.[2] ARG & IDEAS's Motion to Dismiss at 2:23–24; Ex. A, Docket 29. According to this document, "[a]s a result of negotiations held for the Option B Restructure, the previously authorized amount of $43,000.00 is hereby increased by $437,165 to arrive at a final negotiated amount of $480,165.00." Ex. A, Docket 29.

The counter-complaint alleges claims for breach of written contract, professional negligence, gross negligence, express indemnity, implied indemnity, breach of the implied covenant of good faith and fair dealing, and declaratory relief against ARG, IDEAS, and the assignors. ARG and IDEAS have moved to dismiss all claims except the claim for declaratory relief.

---

[2] The counter-defendants filed a "Request for Notice of Contract Modification," which HKS has opposed. The Court may consider "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (citations omitted). The counter-defendants argue that the contract modification meets these criteria. In its opposition, HKS argues that the modification is not central to its claims but does not question the authenticity of the document.

The Court finds that the contract modification is relevant to HKS's alleged damages caused by the breach of contract because the counter-complaint alleges that "the result of this 'modification' of HKS's contract with the GSA was "a net loss of hundreds of thousands of dollars in fees." Counter-Compl. ¶ 24. For this reason, the counter-defendants' request for notice is GRANTED.

3

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I. Breach of contract**

HKS alleges that the counter-defendants breached their agreements with HKS because the counter-defendants' design submissions did not demonstrate an adequate understanding of "historic design requirements" and the counter-defendants violated directions concerning the project goal, scope,

4

1 and budget. Counter-Compl. ¶ 26. HKS alleges that it performed all of its obligations, and seeks
2 damages in an amount that will be proved at trial. *Id.* ¶ 28. The counter-defendants argue that HKS's
3 allegations about damages are conclusory and inconsistent with the contract modification, which shows
4 an increase in the contract price rather than the loss that HKS alleges.

5 In California, to state a cause of action for breach of contract, a party must allege (1) the
6 existence of the contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by
7 the defendant, and (4) resulting damages. *First Commercial Mortg. v. Reese*, 89 Cal. App. 4th 731, 745
8 (2001). The fourth element of "a breach of contract claim requires a showing of appreciable and actual
9 damage" under California law. *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir.
10 2000).

11 The Court concludes that as pled, the counter-complaint does not adequately allege damages.
12 HKS's conclusory allegation that its damages include "costs, damages, attorneys' fees and expenses
13 resulting from these Counter Defendants' failures to honor their obligations under the Contracts" is
14 merely a "formulaic recitation" of damages. *See* Counter-Compl. ¶ 28. HKS alleges that Design Option
15 B was within budget, represented the "best-value," and did "not compromise the historic integrity" of
16 the building under renovation. Counter-Compl. ¶ 23. The counter-complaint does not explain how
17 adoption of a design plan within the budget of GSA after HKS's termination of the counter-defendants
18 for alleged disregard of budget constraints resulted in "a net loss of hundreds of thousands of dollars in
19 fees, fees which would have been earned had GSA not felt the need to proceed with Design Option B."
20 *See id.* ¶ 24. In addition, the contract modification states that upon adoption of Design Plan B, HKS's
21 fee increased. *See* Ex. A, Docket 29. Although HKS argues in its opposition that this increase in price
22 also required an increase in scope, effort and capital, these facts are not alleged in the counter-complaint,
23 and thus cannot be considered in determining the sufficiency of the complaint. *See Nat'l Union Fire*
24 *Ins. Co. v. Res. Dev. Servs., Inc.*, No. 5:10-cv-01324-JF/PVT, 2010 WL 4774929, at *7 (N.D. Cal. Nov.
25 16, 2010) ("[A]llegations raised for the first time in a party's briefing are not considered in determining
26 the sufficiency of the complaint."). The Court will grant HKS leave to amend to add these factual
27 allegations in support of its claim for damages.

28

5

1    HKS also argues that Article 2.1 of the agreements with IDEAS and the assignors provide
2 another measure of damages because under those agreements, IDEAS and the assignors allegedly
3 "forfeit all of the compensation they were paid under those contracts because they have breached those
4 agreements." Counter-Compl. ¶ 28. However, whether HKS is entitled to seek damages under the
5 forfeiture provisions is a separate question from whether HKS has adequately alleged actual damages
6 as a result of the alleged breaches of contract.

7    Accordingly, the Court GRANTS the motion to dismiss and GRANTS HKS leave to amend the
8 breach of contract claim.

## II. Professional negligence & gross negligence

HKS alleges that the counter-defendants committed professional negligence when they submitted designs that did not show a sufficient understanding of "historic design requirements," and when they failed to comply with instructions regarding project goals, scope, and budget. Counter-Compl. ¶ 31. The counter-defendants argue that HKS's professional negligence claim is essentially a breach of contract claim and that HKS cannot recover in tort for the breach of contractual duties.

"To state a cause of action for professional negligence, a party must show (1) the duty of the professional to use such skill, prudence and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence." *Giacometti v. Aulla, LLC*, 187 Cal. App. 4th 1133, 1137 (2010) (internal quotations omitted). The counter-defendants cite *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), for the proposition that "[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." However, "[c]ases decided subsequent to *Aas* and [*Erlich v. Menezes*, 21 Cal.4th 543 (1999)], continue to apply a rule that negligent failure to exercise reasonable care and skill in undertaking to perform a professional services contract is a tort as well as a breach of contract." *City and County of San Francisco v. Cambridge Integrated Services Group, Inc.*, No. C 04-1523 VRW, 2007 WL 1970092, at *4 (N.D. Cal. July 2, 2007) (discussing California cases). As Judge Walker noted in *Cambridge*

6

*Integrated Services Group*, *Aas* (and other cases cited by the counter-defendants here) was a construction defect case brought by homeowners and it "did not address the issue of *professional services* contracts." *Id*. at *3 (emphasis in original). In a case decided after *Aas*, the California Court of Appeal held, "[u]nder the common law the established rule is the negligent failure to exercise reasonable care and skill in undertaking to perform a service contract of this type is a tort, as well as a breach of contract." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1435 (2003) (in an action alleging breach of contract, negligence and negligent misrepresentation against a home inspector, rejecting claim that the plaintiffs were not entitled to tort damages because a breach of the duty of care under a contract).

Here, HKS has alleged the elements of a professional negligence claim, and thus the Court DENIES the motion to dismiss that claim. However, California courts do not recognize a separate cause of action for gross negligence. *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 779–780 (2007). The distinction between ordinary and gross negligence "amounts to a rule of policy that a failure to exercise due care in those situations where the risk of harm is great will give rise to legal consequences harsher than those arising from negligence in less hazardous situations." *Donnelly v. S. Pac. Co.*, 18 Cal. 2d 863, 871 (1941). The Court will GRANT HKS leave to amend the professional negligence claim to include allegations of gross negligence if HKS wishes to pursue that theory within the professional negligence claim.

### III. Express indemnity

HKS alleges that the agreements with the consultants contain clauses in which the counter-defendants agreed to indemnify HKS against judgments from third party claims. Counter-Compl. ¶ 41. Under the indemnity clauses in Section 8.3 of the agreements, the consultants agreed to indemnify HKS "from and against damages, losses and judgments arising from claims by third parties, including reasonable attorneys' fees and expenses recoverable under applicable law, but only to the extent they are caused by the negligent acts or omissions of the" consultants. *Id.*

ARG and IDEAS argue that HKS has not stated a claim for express indemnity because it has not properly alleged a claim for professional negligence. For the reasons stated above, the Court disagrees

7

and concludes that because HKS has stated a claim for professional negligence, HKS has alleged a basis for express indemnity. Accordingly, the Court DENIES the motion to dismiss this claim.

### IV. Implied indemnity

HKS alleges that as a result of the counter-defendants' breach of their contractual duties and the professional standard of care, "Counter Defendants are principally and primarily responsible for the foregoing losses and HKS is owed a right of equitable indemnity for those losses from Counter Defendants, including but not limited to damages for delay of the project, overhead, legal fees, additional design costs, expert costs, labor and materials, as well as other costs." Counter-Compl. ¶ 51. ARG and IDEAS argue that HKS's claim for equitable indemnity fails because HKS does not "identify a claim pertinent to which it is exposed to liability, and about which it seeks to be indemnified." Motion at 10:23–24. Also, ARG and IDEAS argue that there cannot be implied indemnity without tort liability against the proposed indemnitor.

Implied indemnity requires predicate tort liability against the proposed indemnitor. *See BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*, 119 Cal. App. 4th 848, 852 (2004) (finding that equitable indemnity requires "some basis for tort liability against the proposed indemnitor" with limited exception). HKS argues in its opposition that it is possible that HKS could be found jointly liable with either ARG or IDEAS for the negligence claim alleged by ARG and IDEAS in the complaint. However, the counter-complaint does not contain this allegation, nor does the counter-complaint allege any basis for predicate tort liability. Accordingly, the Court GRANTS the motion to dismiss this claim and GRANTS leave to amend.

### V. Breach of implied covenant of good faith and fair dealing

HKS alleges that the counter-defendants' repeated disregard of the terms of the consultant agreements violated the implied covenant of good faith and fair dealing. Counter-Compl. ¶ 56. ARG and IDEAS argue that HKS has not alleged facts that indicate the counter-defendants deprived HKS of the benefit from their contract. In addition, the counter-defendants argue that HKS has not sufficiently

alleged damages, for the same reasons that the damages allegations in support of the breach of contract claim are inadequate.

In every contract "there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354, 365 (1997) (internal quotations and citation omitted). "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995). A claim for breach of the covenant has five elements under California law: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

The Court finds that HKS has not alleged facts that demonstrate the counter-defendants unfairly interfered with HKS's rights to receive the benefits of the contract.[3] "[B]reach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself, and it has been held that [b]ad faith implies unfair dealing rather than mistaken judgment." *Tilbury Constructors, Inc. v. State Compensation Ins. Fund*, 137 Cal. App. 4th 466, 474 (2006) (internal quotations and citation omitted). To state a claim, the party must show:

> [T]he conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). The counter-complaint alleges that the counter-defendants failed to abide by the terms of the agreements and repeatedly disregarded HKS's and the GSA's budget-related and historical preservation directives, and that in doing so, breached the covenant of good faith and fair dealing. However, HKS does not allege

---

[3] For the reasons stated earlier, the Court also finds that the damages allegations are inadequate.

9

1 that the counter-defendants did so "not by an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act." *Id*. Accordingly, the Court GRANTS the motion to dismiss this claim and GRANTS HKS leave to amend.

**VI.  Motion to strike requests for statutory damages and attorneys' fees**

HKS seeks statutory damages and reasonable attorneys' fees.[4] Counter-Compl. at 26. ARG and IDEAS argue that these requests should be stricken because HKS has not identified a statutory violation that would give rise to statutory damages and HKS has not pled any exception to the presumption that each party bears its own attorneys' fees.

The Court finds that HKS has failed to identify a basis for statutory damages in its counter-complaint. In its opposition, HKS cites Federal Rule of Civil Procedure 54(d) as the basis for statutory damages, but that rule provides for costs of suit, and HKS has already requested costs of suit in its prayer for relief. Counter Compl. at 26. If HKS amends its counter-complaint and seeks statutory damages, HKS must identify the basis for such a request.

HKS states that it is entitled to seek fees pursuant to the express indemnity clauses in the consultant agreements. Those clauses provide for recovery of reasonable attorneys' fees "to the extent they are caused by the negligent acts or omissions of the Consultant, its employees and its consultants in the performance of professional services under this Agreement." Counter-Compl. ¶ 41. ARG and IDEAS respond that "attorneys' fees in that context would be covered by paragraph 1 of the prayer for relief, seeking 'damages,'" and they note that the counter-complaint seeks reasonable attorneys' fees under a "prevailing party" clause that is not contained in any agreement between the parties.

The Court directs HKS to clarify the nature of its fee request in the amended counter-claim. If HKS wishes to seek fees pursuant to a "prevailing party" clause, HKS shall specify which agreement contains such a clause.

---

[4] HKS has withdrawn its request for exemplary damages. Opp. at 9 n.4.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS counter-defendant's motion to dismiss with leave to amend. If HKS wishes to amend the counter-complaint, it must do so by **February 28, 2013**. This resolves Docket No. 28.

**IT IS SO ORDERED.**

Dated: February 13, 2013

SUSAN ILLSTON
United States District Judge