IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHITECTURAL RESOURCES GROUP, INC., *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>HKS, INC.,<br><br>    Defendant.<br>_____/ | No. C 12-5787 SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Defendant's motion to dismiss claim 4 (concealment) of the first amended complaint has been submitted for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the motion is DENIED.

**BACKGROUND**

On November 9, 2012, plaintiffs Architectural Resources Group, Inc. ("ARG") and Ideas Consulting, Inc., filed this lawsuit against defendant HKS, Inc.[1] According to the first amended complaint, in August 2009, HKS entered into a written agreement ("the Prime Agreement") with the United States General Service Administration ("GSA") to provide architectural services in connection with the renovation of the federal building located at 50 United Nations Plaza in San Francisco,

---

[1] ARG is also the assignee of certain claims. FAC ¶¶ 2, 7.

California. First Am. Compl. ("FAC") ¶¶ 7-8. ARG entered into a written agreement with HKS to provide associate architectural consulting services on the project (the "ARG Agreement"). *Id*. ¶ 8.

The FAC alleges that "[t]hroughout the design process, the architects and their consultants were given conflicting guidance from GSA concerning its needs. On the one hand, GSA urged the design team to prepare 'aspirational' plans that reflected 20-first century 'green building' visionary concepts, while, on the other hand, GSA cautioned that the existing budget might not accommodate such an option. Due to tension created by these conflicting instructions, HKS was under significant pressure to accommodate and please the GSA, as it had been designated prime architect on the Project." *Id*. ¶ 12. The FAC alleges that in response to ongoing pressure from HKS, plaintiffs and the assignors devoted "huge amounts of time and resources, trying (successfully) to meet unrealistic project deadlines and to solve problems created by expressed design needs that did not realistically appear to fit into the originally stated budget, which plaintiffs are informed and believe has since been increased significantly." *Id*. ¶ 13. On March 24, 2010, HKS sent a written "termination for convenience" letter advising plaintiffs and the assignors that the GSA had elected to move forward with an "Option B" for the Project with a different architect/engineering team. *Id*. ¶ 15.

The FAC alleges that the Agreements "contained a 'flow down' provision by which any claims asserted against the GSA by plaintiffs and/or assignors would be made through HKS, which held the Prime Agreement with GSA." *Id*. ¶ 18. According to the FAC, plaintiffs and assignors "repeatedly informed HKS they intended to submit pass-through claims to HKS for presentation to the GSA in connection with their termination, by which they would seek compensation for all sums due to them in connection with their work on the Project." *Id*. ¶ 19.

On June 15, 2010, HKS wrote plaintiffs and assignors and stated its intent to "convert your previous termination for convenience to a termination for cause." *Id*. ¶ 20. The FAC alleges that there is no legal or factual support for this act, and that "[p]laintiffs are informed and believe the recharacterization as a 'termination for cause' was done in an attempt to artificially thwart their rights to invoke provisions of the [Federal Acquisition Regulations] enabling them to assert certain damage claims under the Federal Acquisition Regulations ("FAR"). *Id*. HKS also informed plaintiffs and assignors of its intent to pay certain fees for work performed up to the date of termination, which the

2

1 complaint alleges was substantially less than the amounts invoiced to HKS and owed to plaintiffs and
2 assignors. *Id.* ¶ 21.

3 The FAC alleges that "[p]er Article 8.1 of the ARG-HKS Agreement, any claim arising out of
4 that agreement 'shall be subject to the same dispute resolution provisions as set forth in the Prime
5 Agreement.'" *Id.* ¶ 22. "The Prime Agreement, in turn, identified and incorporated the [FAR], . . .
6 [which] contains the dispute resolution process to be followed in the event of a termination for
7 convenience." *Id.* ¶¶ 23-24. "Specifically, '[i]f the termination is for the convenience of the
8 Government, the Contracting Officer shall make an equitable adjustment in the contract price but shall
9 allow no unanticipated profit on unperformed services.'" *Id.* ¶ 24 (quoting 48 C.F.R. 52.249-7). "Article
10 I(1) of the Prime Agreement identifies the Contracting Officer as a 'Government employee assigned to
11 the project at its inception' as 'the sole individual with authority to enter into contracts on behalf of the
12 United States or to commit the Government for the expenditure of funds . . . or to modify the cost,
13 schedule, and scope of the contracts so entered into.'" *Id.*

14 The FAC alleges that "[p]laintiffs prepared a claim for equitable adjustment authorized by FAR
15 to be submitted through HKS to the Contracting Officer under the authority cited above, and consistent
16 with custom and practice in the industry by which subcontractors submit termination-related claims
17 against an owner through a prime contractor. ARG's counsel had repeated verbal and written
18 communications with HKS' Senior Vice President Michele MacCraken and HKS' outside counsel
19 Steven Schwarz describing the procedure by which the plaintiffs' 'pass through' claim submittal via
20 HKS was to occur." *Id.* ¶ 25. The FAC alleges that "[f]ollowing the termination for convenience, and
21 with repeated notice to HKS, plaintiffs and assignors devoted significant time and expense to preparing
22 a certified claim for compensation, which they intended for HKS to present to GSA under the above
23 cited provisions of the Prime Agreement and FAR." *Id.* ¶ 26. The FAC alleges that "HKS was aware
24 of the intent of plaintiffs and assignors to submit a claim to the GSA through HKS and, in fact, HKS
25 repeatedly encouraged them to contact HKS' attorneys to keep them apprised of the process, which they

did." *Id.* ¶ 28. The "certified claims"[2] were finalized and ready for submission in or about January 2011. *Id.* The complaint alleges,

> Unbeknownst to plaintiffs and assignors, on June 25, 2010, HKS and GSA entered into an Amendment of Solicitation/Modification of Contract for the purpose of "definitizing a change order dated March 26, 2010." [the "Modification"] . . . . Per the modification, the parties memorialized the "Option B Restructure and Design" and equitably adjusted amounts payable to HKS by GSA on the Project. In consideration for the equitable adjustment, HKS, for itself and on behalf of all subconsultants under it, including plaintiffs and assignors, released GSA from any further liability for any additional equitable adjustments related to the Project. As a result, HKS, without notice to plaintiffs and assignors . . . essentially barred plaintiffs and assignors from submitting any claims to GSA relating to the Project, including the claims identified above.

*Id.* ¶ 29.

The FAC alleges that HKS hid the fact that it entered into the Modification with GSA for over seven months, until February 3, 2011. *Id.* ¶ 30. On or about that date, HKS notified plaintiffs and assignors of the Modification. *Id.* On or about February 24, 2011, plaintiffs and assignors submitted a claim directly against HKS seeking amounts due and owing to them as result of the termination for convenience. *Id.* ¶ 31. "The claim was submitted pursuant to Article 8.2 of the Agreements, which authorizes claims to be lodged directly with HKS in the event the claims were not possible under the 'flow down' provisions." *Id.*

The FAC alleges claims for breach of written contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, concealment on behalf of plaintiff ARG, declaratory relief, and negligence. Defendant has moved to dismiss the amended claim for concealment.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff

---

[2] According to the FAC, "[t]he components of the claims of plaintiffs and assignors consist of a demand for unpaid base work scope under the Agreements, unpaid extra work performed under the Agreements, and termination-related costs and attorneys' fees and costs as allowable by law." *Id.* ¶ 27.

4

to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

The amended complaint alleges a claim for concealment on behalf of plaintiff ARG. The FAC alleges, "[i]n late February 2010, ARG is informed and believes HKS became convinced that the Project contained a defective specification in that the aspirational design requested by the GSA could not be accomplished within the Project budget, and that HKS also became convinced that the GSA was not going to be able to increase the Project budget, despite repeated verbal intimations to the contrary." FAC ¶ 54. The FAC alleges that "ARG is informed and believes that HKS, unbeknownst to the existing design team, recruited another design team to design an Option B, which essentially left the building in its 'as is' state with respect to corridor alignment and the like, and which therefore had none of the 'green building' features that have been part of the aspirational design that the original team had been

5

asked to develop." *Id*. ¶ 55. The FAC alleges that the before ARG was notified it was terminated for convenience, HKS asked ARG to provide additional services for an 'Option B,' along with a fee estimate to implement Option B, and ARG complied with HKS's request." *Id*. ¶ 56. "ARG is informed and believes and thereon alleges that at the time HKS made these requests, HKS had no intention of retaining ARG as part of the new design team, but instead intended to terminate ARG for convenience immediately after securing ARG's work product for the use of the new design team. Had ARG known of HKS' true intention, it never would have created and provided its work product to HKS without ensuring ARG would be paid for it." *Id*. The FAC alleges that "despite the fact HKS knew it was terminating ARG for convenience and that it had no intention of paying ARG for all of its work, HKS continued to conceal this fact from ARG, and in fact continued to solicit designs, work product, and revised fee estimates from ARG up to and including March 24, 2010." *Id*. ¶ 57. On March 24, 2010, ARG and the other consultants were told by HKS that they have been terminated for convenience. *Id*. ¶ 58.

The FAC alleges that "[i]n or about March, 2010, and thereafter, HKS actively concealed important facts from ARG, including, without limitation: (1) the fact that HKS intended to proceed with the Project on an Option B with the benefit of ARG's work product, while cutting ARG out of the negotiation process for securing continued work on the Project; and (2) the fact that HKS intended to, and indeed did, enter into the Modification, and in connection therewith to release and cut off all of ARG's rights to claim entitlement to compensation or otherwise pursue legal remedies against the GSA relating to the Project. Furthermore, after taking the acts identified in this paragraph, HKS concealed the true state of affairs from ARG for over seven months, while ARG incurred additional extensive legal and accounting fees presenting a claim for termination-related damages under FAR, only to learn that it was precluded from pursuing that claim due to the acts of HKS." *Id*. ¶ 60.

"[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result

6

of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (1992).

HKS contends that the FAC does not allege facts establishing HKS a duty to disclose either allegedly concealed fact. Relatedly, HKS argues that because there was no duty to disclose, ARG was not damaged by the failure to disclose. "[A] duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement. All of these relationships are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances." *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 336 (1997). Thus, the Court must look to the transaction between the parties to determine if HKS had a duty to disclose (1) the fact that HKS intended to proceed with the Project on an Option B with the benefit of ARG's work product, while cutting ARG out of the negotiation process for securing continued work on the Project, and (2) the Modification of the Prime Agreement and HKS's release of GSA from any further liability for any additional equitable adjustments related to the Project.

With respect to the first allegedly concealed fact, the Court finds that the FAC sufficiently alleges the elements of a concealment claim. The FAC alleges that in connection with the initial bids on the project, ARG and HKS agreed to submit, and did submit a proposal as part of a joint design team. FAC ¶ 51. According to the FAC, the project documentation was set up such that HKS signed the Prime Agreement and ARG executed an agreement with HKS. *Id*. "Regardless, the parties worked on the project as a joint design team, as exemplified by the responsibility matrix attached to the ARG Agreement." *Id*. The FAC alleges that as a result, the parties "occupied a special business relationship by and between themselves." *Id*. ¶ 52. The FAC further alleges that HKS knew it was going to terminate ARG for convenience, and yet continued to solicit designs, work product, and revised fee estimates from ARG, with the intention of using ARG's work product for the use of the new design team. *Id*. ¶¶ 56-57. In light of the parties' contractual relationship, and accepting the allegations as true, the Court finds that HKS would have a duty to disclose that it intended to terminate ARG for convenience because "[h]ad ARG known of HKS' true intention, it never would have created and provided its work to HKS without insuring ARG would be paid for it." *Id*. ¶ 56.

7

1    With respect to the second allegedly concealed fact, HKS contends that ARG never had the right
2 to assert a claim directly against the GSA, and thus HKS did not have a duty to disclose the
3 Modification to ARG. ARG does not dispute that "the government, though a party to the prime contract,
4 has no contract with the subcontractor and is not liable to him nor is it suable by him." *American Pipe*
5 *& Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640, 643 (9th Cir. 1961) (citing *Severin v.*
6 *United States*, 99 Ct. Cl. 435, *cert. denied*, 322 U.S. 733 (1944)). However, ARG cites the FAC's
7 allegation that there is a "custom and practice in the industry by which subcontractors submit
8 termination-related expenses against an owner through a prime contractor." FAC ¶ 25.

9    The Court of Federal Claims has explained,

> Therefore, in most cases, the subcontractor has no right of direct action against the Government, but must go through the prime contractor. *See, e.g.*, *Nat'l Leased Hous. Assoc. v. United States*, 32 Fed. Cl. 454, 460 (1994). There are two ways in which a subcontractor can recover indirectly from the Government. First, any subcontractor claims that are sponsored or certified by a prime contractor and are brought in the prime contractor's name are allowed. *United States v. Turner Constr. Co.*, 827 F.2d 1554, 1559–61 (Fed. Cir.1987). Second, a prime contractor can include its liability to a subcontractor in its damages against the Government. *Pan Arctic Corp. v. United States*, 8 Cl. Ct. 546, 548 (1985).

*Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550, 553 (Fed. Cl. 2001).

16   The FAC implicitly alleges that ARG was in the process of pursuing the first route –
17 "subcontractor claims that are sponsored or certified by a prime contractor" – by alleging that plaintiffs
18 "prepar[ed] a certified claim for compensation, which they intended for HKS to present to GSA under
19 the above cited provisions of the Prime Agreement and FAR." FAC ¶ 26; *see also id*. ¶ 28 ("The
20 certified claims were finalized and ready for submission in or about January 2011.").

21   HKS "acknowledges that it is not unusual for a prime contractor to pass subcontractor claims
22 through to the government [but] . . . that can only be done after the prime contractor has certified the
23 claim to be passed through to the government." Docket No. 56 at 12 n.6.[3] HKS asserts that it did not
24 and does not believe that ARG's claims for termination expenses and other extra-contractual damages
25 have merit, and therefore it did not certify the claims. HKS contends that ARG's concealment claim

---

[3] Because the FAC alleges that there is a "custom and practice" by which subcontractors submit termination-related expenses against an owner through a prime contractor, the Court finds it unnecessary to address the parties' arguments about whether the contracts at issue can be construed as containing a "flow down" provision.

8

based on the failure to disclose the Modification is "tantamount to saying that HKS has an affirmative obligation to certify their claims for presentation to the GSA." *Id*. at 8:16-17.

The Court disagrees with HKS's characterization of ARG's concealment claim, and finds that ARG has stated a claim for concealment based on the failure to disclose the Modification. The FAC does not allege that ARG was harmed by the failure to disclose the Modification because HKS was required to certify ARG's claim. Instead, the FAC alleges HKS knew ARG intended to submit a pass-through claim, and that by entering into the Modification on June 25, 2010, HKS "essentially barred plaintiffs and assignors from submitting any claims to GSA relating to the Project," and yet HKS did not tell ARG about the Modification until February 2011. FAC ¶¶ 29-30. The FAC alleges that ARG repeatedly informed HKS that it intended to submit pass-through claims to HKS for presentation to the GSA; ARG's counsel had "repeated verbal and written communications with HKS' Senior Vice Principal Michele MacCraken and HKS' outside counsel Steven Schwarz describing the procedure by which plaintiffs' 'pass-through' claim submittal via HKS was to occur"; HKS repeatedly told ARG to keep it apprised of the claim process, and ARG did so; and between March 2010 and January 2011, ARG worked on preparing its claim and incurred additional extensive accounting and legal fees as a result. *Id*. ¶¶ 19, 25-26, 28, 60. Under the facts alleged in the FAC, the Court finds that HKS had a duty to disclose the Modification to ARG because although there was no guarantee that HKS would certify ARG's claim, HKS knew that ARG intended to submit a pass-through claim to HKS for presentation to the GSA and repeatedly communicated with ARG regarding the process; the Modification impaired ARG's ability to submit a pass-through claim; and ARG continued to incur expenses preparing its claim after the Modification was executed.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendant's motion to dismiss

**IT IS SO ORDERED.**

Dated: March 28, 2013

SUSAN ILLSTON
United States District Judge

9